# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| TRICIA G.,[1] | : | Case No. 1:22-cv-00412 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Supplemental Security Income (SSI) on

September 25, 2019.[2] Plaintiff's claim was denied initially and upon reconsideration.

After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that

Plaintiff was not eligible for benefits because she was not under a "disability" as defined

in the Social Security Act. The Appeals Council denied Plaintiff's request for review of

that decision, and Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] Plaintiff previously filed an application Disability Insurance Benefits alleging disability beginning on February 3, 2017. An ALJ denied that application in a decision dated September 12, 2019. (Doc. No. 8-3 at PageID 120-45.)

Court to affirm the non-disability decision. For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since January 31, 2017.[3] She was forty-eight years old on the date the application was filed. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 416.964(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the ALJ's Decision ("Decision," Doc. No. 8-2 at PageID 36-49), Plaintiff's Statement of Errors ("SE," Doc. No. 11), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 13), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 14). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically

---

[3] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on September 25, 2019. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1:    Plaintiff has not engaged in substantial gainful activity since September 25, 2019, the application date.

Step 2:    Plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine, polyarthralgia, major depressive disorder, posttraumatic stress disorder (PTSD), and generalized anxiety disorder.

4

She has the following nonsevere impairments: iron deficiency anemia and obesity.

Step 3:      Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      Plaintiff's residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light exertional work as defined in 20 C.F.R. § 416.967(b) subject to the following limitations: "[S]he cannot climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She can perform simple, routine tasks not involving close contact with the public. She can perform tasks where duties remain relatively static and changes can be explained."

Plaintiff is unable to perform any past relevant work.

Step 5:      Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 8-2 at PageID 41-49.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 49.)

### B.      Symptom Severity

The ALJ summarized Plaintiff's symptoms and subjective complaints, as follows:

Initially, [Plaintiff] alleged disability due to PTSD, anxiety, depression, and low back pain (B1E/2). She reported medication side effects of lack of energy, memory problems, tiredness, and upset stomach (B3E/9). At the hearing, [Plaintiff] testified that she is prevented from working due to pain in her upper and lower back. She added that the loss of her son took a toll on her mental health and affected her ability to concentrate and take care of herself. She also reported that her prior position of nurse resulted in "triggers" and caused anxiety and panic attacks. [Plaintiff's] reported

5

> treatment includes medications to help her sleep, pain medication, chiropractic care, injections, and physical therapy. [Plaintiff] also reported iron infusions and taking psychotropic medication.
>
> [Plaintiff] testified that she has continued to have panic attacks despite medication and behavioral health treatment. [Plaintiff] described her pain as constant in her lower back and right hip. She said she cannot stay in one position, such as sitting or standing, for long. She added she could stand or sit for about 30 minutes at a time. She estimated she could lift up to about 25 pounds.
>
> She also reported that she has memory problems and trouble concentrating. She said she does not have problems getting along with others but she does not go out unless she has to. She said she has had a lot of anxiety since her son died. She reported that during a typical day she struggles with lack of motivation. She said she lives alone and can prepare simple things to eat. [Plaintiff] also remarked that she takes her best friend with her when grocery shopping due to triggers that are present at the store (testimony).

(Decision, Doc. No. 8-2 at PageID 44-45.) The ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause some of her symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at PageID 45.)

### 1. *Physical impairments*

Plaintiff testified that she has "constant" pain in her lower back and right hip, and pain in her upper and lower back. (Decision, Doc. No. 8-2 at PageID 44.) Plaintiff stated that she can stand or sit up to thirty minutes and lift up to 25 pounds. (*Id*.)

In September 2019, Plaintiff reported back pain and her physical therapy notes "showed tenderness to palpation and decreased mobility from C7-T4." (Decision, Doc. No. 8-2 at PageID 45.) In October 2019, a lumbar spine MRI "showed multilevel disc desiccation, broad central protrusion at L1-2 with thecal sac effacement, and mildly

compressive disc bulge at L2-3 and L4-5." (*Id*.) Cervical spine x-rays showed degenerative changes at C4-7. (*Id*.) Lumbar spine x-rays showed no curvature with multilevel degenerative disc disease. (*Id*.) An MRI of the lumbar spine showed mild multilevel degenerative disc disease and facet arthropathy with minimal neuroforaminal narrowing at L3-4. (*Id*.)

In November 2019, a physical examination by a certified physician assistant showed a stable gait and a positive straight leg raise. (Decision, Doc. No. 8-2 at PageID 45.) Physical examinations in November and December 2019 by a certified physician assistant showed limited range of motion in the cervical and lumbar spine due to pain. (*Id*.) A January 2020 physical examination by a gastroenterologist was unremarkable, with no tenderness to palpation. (*Id*. (citing AR, Doc. 8-10 at PageID 1926).) An April 2020 physical examination by a rheumatologist showed widespread tenderness to palpation, a normal gait, full range of motion in the neck, and no tenderness in the neck or back. (*Id*. (citing AR, Doc. 8-8 at PageID 1225).) A May 2020 physical examination by a hematologist showed a good range of motion in all major joints, no spine tenderness, and no bony tenderness to palpation. (*Id*. (citing AR, Doc. 8-8 at PageID 1575).) A June 2020 physical examination by a gastroenterologist was unremarkable, with no tenderness to palpation. (*Id*. (citing AR, Doc. 8-10 at PageID 1547).) A November 2020 physical examination by a hematologist showed a good range of motion in all major joints, no spine tenderness, and no bony tenderness to palpation. (*Id*. (citing AR, Doc. 8-10 at PageID 1524).)

7

After reviewing the medical records, the ALJ found that although Plaintiff's physical impairments were somewhat limiting, the objective evidence showed that the limitations "are not as severe or persistent as alleged." (Decision, Doc. No. 8-2 at PageID 45.) The ALJ concluded that these limitations could be accommodated by a restriction to light work with postural restrictions. (*Id*. at PageID 46.)

### 2. *Mental impairments*

Plaintiff was diagnosed with PTSD, anxiety, and depression. (Decision, Doc. No. 8-2 at PageID 44-45.) Her symptoms included panic attacks, lack of concentration and motivation, memory problems, and difficulty with getting along with others, completing daily activities, performing self-care, and going out alone. (*Id*.) Plaintiff testified that she continued to have panic attacks despite medication and behavioral health treatment. (*Id*.)

The ALJ described the medical records that documented Plaintiff's treatment for her mental impairments. (Decision, Doc. No. 8-2 at PageID 46-47.) She acknowledged that Plaintiff's subjective complaints to her providers included depression, anxiety, flashbacks to traumatic events, distress, avoidance of trauma triggers, irritability, an exaggerated startle response, sleep difficulties, decreased activity, and difficulty completing tasks. (*Id.*) The ALJ also acknowledged abnormal examination findings that included anxious and/or depressed moods, tearfulness, anger, a variable affect, fidgeting behavior, and circumstantial thought processes. (*Id.*)

The ALJ compared these findings to examinations that showed a normal mood and affect, intact memory, good attention, and normal judgment. (Decision, Doc. No. 8-2 at PageID 46-47). The ALJ concluded that although Plaintiff's mental impairments were

8

somewhat limiting, "they are not quite as severe or persistent as alleged." (*Id*. at PageID 46.) The ALJ noted the lack of objective findings related to her claimed difficulties with memory, concentration, and interacting with others. (*Id*. at PageID 46-47.) The ALJ concluded that Plaintiff's mental limitations could be accommodated with restrictions to simple and routine tasks, no close contact with the public, and tasks where duties remain relatively static and changes are explained. (*Id*.)

### 3. *Medication side effects*

The ALJ acknowledged that in November 2019, Plaintiff reported medication side effects of lack of energy (Atenolol), memory problems (Ambien), tiredness (Atenolol and Tizanidine), and an upset stomach (Ibuprofen). (Decision, Doc. 8-2 at PageID 44 (citing AR, Doc. 8-6 at PageID 274).) The ALJ did not explicitly address the impact of these side effects on Plaintiff's ability to work.

## IV. THE ALJ DID NOT REVERSIBLY ERR WHEN EVALUATING PLAINTIFF'S SYMPTOM SEVERITY

Plaintiff argues that the ALJ reversibly erred when evaluating her symptom severity, including the ALJ's consideration of her physical impairments, mental impairments, and adverse medication side effects. (SE, Doc. No. 11 at PageID 2111-18). For the reasons set forth below, the Court disagrees. Because the ALJ applied the correct legal standards and her findings are supported by substantial evidence, the Court must affirm the ALJ's decision. *Blakley*, 581 F.3d at 406.

A.      **Applicable Law.**

The ALJ's evaluation of Plaintiff's symptoms was governed by a detailed Social

Security regulation (20 C.F.R. § 416.929) and Social Security Ruling (SSR) 16-3p, which

mandates a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017

WL 5180304, *3 (revised and republished Oct. 25, 2017).[4]

At the first step, the ALJ must "determine whether the individual has a medically

determinable impairment that could reasonably be expected to produce the individual's

alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon

objective medical evidence in the form of medical signs or laboratory findings. *Id*.

Medical signs are "anatomical, physiological, or psychological abnormalities established

by medically acceptable clinical diagnostic techniques that can be observed apart from an

individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective

medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an

individual's symptoms . . . and determine the extent to which an individual's symptoms

limit his or her ability to perform work-related activities." SSR 16-3p at *9. As part of

this analysis, the ALJ must decide whether an individual's symptoms and accompanying

limitations are consistent with the evidence in the record. SSR 16-3p at *8.  The Social

Security Administration "recognize[s] that some individuals may experience symptoms

differently and may be limited by symptoms to a greater or lesser extent than other

---

[4] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. For example, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that these statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 416.929(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id.* The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

### B. Evaluation Of Plaintiff's Physical Impairments

Plaintiff argues that the evidence cited by the ALJ does not support her conclusion that Plaintiff's alleged limitations were not entirely consistent with the objective medical evidence regarding her physical impairments. (SE, Doc. No. 11 at PageID 2112-15.) The Court disagrees and finds that the ALJ's conclusion is supported by substantial evidence.

### 1. The ALJ did not err by relying on normal examination findings from Plaintiff's hematologist and gastroenterologist.

Plaintiff argues that the ALJ should not have relied on normal examination findings from her hematologist (Dr. Sendilnathan) and gastroenterologist (Dr. Bearelly) when evaluating the severity of her musculoskeletal symptoms. (SE, Doc. No. 11 at PageID 2112-13.) Citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), Plaintiff argues that "a reasonable mind" would not find these notes sufficient to counter the alleged severity of Plaintiff's musculoskeletal complaints. (*Id.* at PageID 2113.) Plaintiff speculates that it is "unlikely" that these specialists "performed thorough evaluations of the cervical and lumbar spine." (*Id.*) Plaintiff further speculates that these treatment notes were "likely" auto-generated by the hospital's electronic record system. (*Id.*)

In *Biestek*, the United States Supreme Court explained that the substantial evidence standard does not impose a high threshold, and "means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" 139 S. Ct. at 1154 (citation omitted). The Court finds that Dr. Bearelly's and Dr. Sendilnathan's treatment notes constitute substantial evidence. No rule or regulation required the ALJ, when reviewing objective medical evidence, to assign different weight to evidence from these medical providers because of their areas of specialization. Although the regulation governing the evaluation of medical opinions does impose such a requirement, *see* 20 C.F.R. § 416.920(c), the examination findings at issue here constitute objective medical evidence, not medical opinions. 20 C.F.R. § 416.913(a)(1) and (2). Therefore, the ALJ was not required to consider the specializations of Plaintiff's gastroenterologist and hematologist when evaluating their examination findings.

The Court also finds that there is no evidence that the specialties of Dr. Bearelly and Dr. Sendilnathan adversely affected their abilities to physically examine Plaintiff and record their findings. Similarly, there is no evidence that these physicians did not perform the examinations documented in their notes. (*See* SE, Doc. No. 11 at PageID 2112-14.) Contrary to Plaintiff's contention that the ALJ erred by failing to speculate (on her own accord) about these issues, the ALJ in fact would have erred if she had engaged in such speculation. *See, e.g., Edwards v. Berryhill*, No. 3:16-CV-00086, 2017 WL 1062495, at *6 (S.D. Ohio Mar. 21, 2017) (Ovington, M.J.) (ALJ erred by speculating that physician lacked sufficient training to offer opinion); *Price v. Comm'r of Soc. Sec.*, No. 3:13-CV-

00394, 2015 WL 93644, at *5 (S.D. Ohio Jan. 7, 2015) (Newman, M.J.) (ALJ erred by discounting medical opinion on the basis of "mere supposition").

Nor was the ALJ required to qualify her assessment of these treatment notes by considering each provider's specialty and the problems for which they treated Plaintiff. (Doc. No. 11 at PageID 2113-14 & 2138.) As noted, ALJs are not required to assign different weight to objective medical evidence based upon each provider's area of specialization. And it is well-established that "the regulations do not require an ALJ to use magic words or any specific phrasing." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.).

Accordingly, the Court concludes that the ALJ did not err by relying on Dr. Bearelly's and Dr. Sendilnathan's treatment notes.

## 2. The ALJ's RFC is supported by substantial evidence.

A claimant's RFC describes the most that she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 416.9545(a)(1). Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 416.946(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical

14

evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 416.945(a)(1)-(5).

Plaintiff argues that the ALJ failed to adequately explain how the RFC limitations account for her physical impairments. (SE, Doc. No. 11 at PageID 2114.) This assertion is not well-taken. The ALJ acknowledged Plaintiff's subjective complaints, evaluated the objective medical evidence, compared these complaints to the evidence, and included limitations in the RFC to account for the balance of the evidence. Specifically, the ALJ cited Plaintiff's pain complaints when summarizing the disability reports, Plaintiff's testimony, and Plaintiff's visits to medical providers. (Decision, Doc. No. 8-2 at PageID 44-45.) The ALJ also compared Plaintiff's pain complaints to the medical evidence and Plaintiff's treatment. (*Id.* at PageID 45.) The ALJ concluded:

> Based on these varying, and at times normal, physical exam results, [Plaintiff's] alleged limitations are not entirely consistent with the objective medical evidence. For example, some exams noted decreased lumbar and cervical spine range of motion though other exams were normal. Any remaining limitations were sufficiently addressed by limiting [Plaintiff] to light work with postural restrictions.

(Decision, Doc. No. 8-2 at PageID 46.) The ALJ's analysis complied with the governing legal framework and she was not required to do more.

Plaintiff also challenges the ALJ's analysis of Plaintiff's complaints of difficulty with sitting, standing, and walking, and contends that the ALJ should have included a sit/stand option in the RFC. (SE, Doc. No. 11 at PageID 2114-15.) But the ALJ was not required to evaluate and discuss every alleged symptom and subjective complaint individually and include corresponding restrictions in the RFC. *See, e.g., Kohler v.*

15

*Colvin*, No. 3:14-CV-00163, 2015 WL 3743285, at \*5 (S.D. Ohio June 15, 2015)

(Ovington, M.J.) ("The ALJ was not required to accept as true every symptom [the

plaintiff] reported and provide a corresponding limitation in the [RFC] assessment to

account for it."), *report and recommendation adopted*, 2015 WL 4214469 (S.D. Ohio

July 10, 2015) (Rose, D.J.); *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d

792, 807 (E.D. Mich. 2013) ("As long as the final decision incorporates all of the

claimant's impairments—and here, the ALJ stated she did consider all of [the claimant's]

'subjective symptoms and complaints'—the fact an ALJ did not specifically state every

piece of evidence or every symptom is not an error."); *Chandler v. Comm'r of Soc. Sec.*,

No. 2:13-CV-324, 2014 WL 2988433, at \*11 (S.D. Ohio July 1, 2014) (Kemp, M.J.)

("[T]he fact an ALJ did not specifically state every piece of evidence or every symptom

is not an error.")

     Moreover, the Court is not permitted to re-weigh the evidence and decide whether

substantial evidence would support a different conclusion. *Emard v. Comm'r of Soc. Sec.*,

953 F.3d 844, 849 (6th Cir. 2020). Instead, the Court may only determine whether the

ALJ's RFC (which does not include a sit/stand option) is supported by substantial

evidence—and the Court finds that it is. Plaintiff did not cite any medical opinion that she

must consistently change positions throughout the workday. (SE, Doc. No. 11 at PageID

2115.) The ALJ acknowledged many of Plaintiff's subjective complaints, including back

and hip pain, difficulty with daily activities, and difficulty with exertional activities such

as lifting, sitting, and standing. (Decision, Doc. No. 8-2 at PageID 44-45.) The ALJ also

acknowledged Plaintiff's testimony that she could not stay in one position "for long" and

16

that she could stand or sit for approximately thirty minutes at a time. (*Id.* at PageID 44.)
The ALJ cited to lumbar and cervical spine imaging that showed degenerative disc
disease. (*Id.* at PageID 45.) She acknowledged abnormal objective findings such as
tenderness to palpation, decreased range of motion, widespread pain, and positive straight
leg raising. (*Id.*) The ALJ compared these findings to other examinations that showed a
stable gait, intact strength and sensation in the extremities, full range of motion, no
tenderness to palpation, and a normal gait. (*Id.*) Notably, in addition to the normal
findings during hematology and gastroenterology visits that the ALJ cited, other
orthopedic examinations showed normal findings that included a normal gait, normal
sensation, and full strength in all extremities. (*E.g.,* AR, Doc. No. 8-7 at PageID 502,
507-08, 743; Doc. No. 8-8 at PageID 1225; Doc. No. 8-9 at PageID 1491.)

The ALJ concluded that the balance of the objective evidence did not support
Plaintiff's allegations of symptom severity, and limited Plaintiff to a reduced range of
light work in the RFC with postural restrictions. (Decision, Doc. No. 8-2 at PageID 45-
46.) The ALJ's conclusions are supported by substantial evidence and the ALJ did not err
by failing to include a sit/stand option in the RFC.

### 3. The ALJ did not reversibly err in evaluating the claimed medication side effects.

Plaintiff contends that the ALJ reversibly erred by failing to consider the impact of
the side effects of her medications. Although the ALJ acknowledged those side effects,
Plaintiff argues that the ALJ was required to expressly discuss how the side effects
factored into her conclusions, if at all. (SE, Doc. No. 11 at PageID 2117-18.)

17

As an initial matter, medication side effects are a subjective symptom. 20 C.F.R.
§ 404.1529(c)(3)(iv). As noted above, the ALJ was not required to address each
individual symptom in her decision.

Furthermore, the record does not substantiate Plaintiff's complaints (asserted in a
disability report and at the hearing) of disabling side effects. To the contrary, she
repeatedly denied experiencing adverse side effects from her medications when
questioned by her medical providers. (*E.g.,* AR, Doc. No. 8-7, PageID 684 ("Medical
Medications: Client denies current physical complaint/concerns."); AR, Doc. No. 8-11,
PageID 2042 ("Medical Medications: atenolol; Client denies current physical
complaint/concerns."), 2053 (same), 2062 (same), 2072 (same).)

Because Plaintiff did not cite to any evidence that she complained to her providers
about disabling side effects, the ALJ did not err by failing to find the claimed side effects
to be disabling. *See, e.g.*, *Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir.
2004) (no error where the ALJ rejected plaintiff's testimony regarding medication side
effects that "were not documented in the record"); *Essary v. Comm'r of Soc. Sec.*, 114 F.
App'x 662, 665 (6th Cir. 2004) ("[The plaintiff's] assertion that the ALJ failed to take
stock of her [medication side effects] . . . lacks merit. Although [the plaintiff] testified
that she suffered from dizziness and drowsiness as a result of her medication, [her]
medical records make no indication that [she] reported such side effects to any of her
physicians."); *Nikki H. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00353, 2023 U.S. Dist.
LEXIS 115391, *11 (W.D. Ky. June 30, 2023) ("Claimant's failure to provide any
citations to the record supporting that she experienced side effects ***and reported the same***

18

*to her providers* is fatal to her claim.") (emphasis added). Accordingly, this argument is not well-taken.

### C. Evaluation Of Plaintiff's Mental Impairments

Plaintiff argues that the evidence cited by the ALJ does not support her conclusion that Plaintiff's alleged limitations were not entirely consistent with the objective medical evidence regarding her mental impairments. (SE, Doc. No. 11 at PageID 2115-17.) The Court disagrees and finds that the ALJ's conclusion is supported by substantial evidence.

### 1. The ALJ did not err by relying on records from Plaintiff's hematologist and gastroenterologist.

Plaintiff contends that the ALJ improperly relied on mental status examination findings from Plaintiff's hematologist and gastroenterologist when she assessed the severity of Plaintiff's mental impairments. (SE, Doc. No. 11 at PageID 2115-16.) As an initial matter, the ALJ did not rely *exclusively* on gastroenterology and hematology treatment notes. As explained above, moreover, the ALJ was not required to assign different weight to these findings merely because of the specializations of these providers. The Court therefore finds that the ALJ did not err by relying on the mental status examination findings in these providers' treatment notes.

### 2. The ALJ did not err by relying on a telephonic behavioral health progress note.

Plaintiff also challenges the ALJ's reliance on a behavioral health progress note in which AP Nurse Gutowski reported that Plaintiff had no difficulty interacting with clinicians and no abnormal findings related to memory or concentration. (SE, Doc. No. 11 at PageID 2116, citing AR, Doc. No. 8-11 at PageID 2045-46.) According to Plaintiff,

the ALJ erred because "the appointment lasted 30 minutes and took place over the telephone" and it was not "indicative of an ability to maintain adequate attention and memory abilities [for] 8 hours a day, 5 days a week, consistently over time while at work." (SE, Doc. No. 11, PageID 2116-17.)

Courts have rejected the argument that an ALJ should find telehealth notes to be unpersuasive. *See, e.g.*, *Marlowe v. Comm'r of Soc. Sec.*, No. 1:22-CV-1020, 2023 WL 2541436, at *11 (N.D. Ohio Feb. 21, 2023) (rejecting argument that ALJ failed to "account [for the fact] that the majority of the records . . . were based on telephonic doctor's [sic] visits"); *Scott S. v. Kijakazi*, No. 2:22-cv-0149, 2023 WL 3581777, at *4 (E.D. Wash. May 19, 2023) (ALJ may properly rely upon observations of claimant's demeanor made during mental telehealth visit); *Tyner v. Comm'r of Soc. Sec.*, No. 8:21-CV-2943, 2022 WL 17844053, at *6 (M.D. Fla. Dec. 22, 2022) (rejecting argument that ALJ should not be permitted to consider telehealth treatment notes).

Moreover, the examination described in the challenged treatment note was merely one of several examinations that showed no memory or concentration deficits. (*E.g.,* AR, Doc. No., 8-7 at PageID 676-77, 687-88, 698-99; Doc. No. 8-9 at PageID 1343, 1354-55, 1365; Doc. No. 8-11 at PageID 2055-56, 2065-66, 2075-76.)

In addition, the ALJ did not rely on this treatment note to conclude that Plaintiff has *no* limitations in social functioning or in the ability to remember and pay attention. Instead, the ALJ found moderate impairment in the corresponding "Paragraph B" areas at Step 3, and limited Plaintiff to performing simple, routine tasks not involving close

contact with the public, where duties remain relatively static, and where changes can be explained. (Decision, Doc. No. 8-2 at PageID 43-44.)

Plaintiff's argument is essentially a "wish the ALJ had interpreted the evidence differently." *Lashawn W. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00415, 2022 WL 896788, at *5 (S.D. Ohio Mar. 28, 2022) (Silvain, M.J.) (internal citation omitted). But this Court is not permitted to re-weigh the evidence and decide whether substantial evidence would support a different conclusion. Therefore, this argument is not well-taken.

### 3.  The ALJ did not reversibly err in assessing Plaintiff's RFC.

Finally, Plaintiff argues that the ALJ improperly failed to account for Plaintiff's many mental health treatment appointments. (SE, Doc. No. 11 at PageID 2117.) Plaintiff asserts that she saw a mental health provider "at least twice per month," and argues that "[v]ocational experts consistently testify missing two days of work each month is work preclusive." (*Id.*)

Plaintiff bears the burden of showing that her medically necessary appointments would unavoidably cause her to miss work. *E.g.*, *Maddy v. Comm'r of Soc. Sec.*, No. 3:18-CV-00363, 2019 WL 5781621, at *5, n. 6 (S.D. Ohio Nov. 6, 2019) (Newman, M.J.); *Bray v. Comm'r of Soc. Sec.*, No. 1:13-CV-00040, 2014 WL 4377771, at *2-3 (S.D. Ohio Sept. 3, 2014) (Barrett, D.J.). "Evidence of frequent medical appointments is not enough," and it is "inappropriate . . . to draw an inference that frequent medical appointments, alone, necessitate frequent absences from work." *Noe v. Kijakazi*, No. 5:22-CV-0144, 2023 WL 2382729, at *4 (E.D. Ky. Mar. 6, 2023).

Here, Plaintiff offered no evidence to support her argument. She did not cite to an opinion from any of her treating providers regarding the likelihood of absenteeism. Nor did she cite to evidence that her appointments would necessarily interfere with her work schedule. To the contrary, as noted above, Plaintiff emphasized that at least some of her appointments are relatively brief and telephonic. (SE, Doc. No. 11 at PageID 2116-17.) Accordingly, this argument is also not well-taken.

## IV.    CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports her conclusions. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 11) is **OVERRULED**;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.

**IT IS SO ORDERED.**

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge